PEOPLE v COUSINS

Docket No. 70555. Submitted June 19, 1984, at Lansing.—Decided
    December 17, 1984. Leave to appeal applied for.

Robert T. Cousins was convicted in Saginaw Circuit Court, Fred
    J. Borchard, J., of 11 separate offenses arising from an episode
    in which he escaped from jail in Saginaw by overpowering a
    deputy, shot a postal employee, and entered a citizen's home
    and forced her to drive him to Detroit. Defendant appealed,
    alleging several errors. *Held:*

   1. Defendant claimed there was insufficient evidence to sup-
    port his conviction of taking the deputy as a hostage. The term
    "as a hostage", as used in the statute under which defendant
    was convicted, implies the unlawful taking, restraining or
    confining of a person with the intent that the person be held as
    security for the performance, or forbearance, of some act by a
    third person. Furthermore, the statute requires only an intent
    to use the victim as a hostage and not that the defendant have
    actually used the victim as a hostage. Viewing the evidence
    herein in a light most favorable to the prosecution, the jury
    could have inferred beyond a reasonable doubt that the defen-
    dant took the deputy into an elevator with the intent to use
    him as a hostage if necessary.

   2. The trial court's failure to instruct the jury on the mean-

REFERENCES FOR POINTS IN HEADNOTES

[1] 1 Am Jur 2d, Abduction and Kidnapping §§ 20, 21.
  Seizure of prison official by inmates as kidnapping. 59 ALR3d 1306.
[2] 5 Am Jur 2d, Appeal and Error §§ 882, 883, 885.
[2, 3] 21 Am Jur 2d, Criminal Law §§ 3, 4.
[3] 29 Am Jur 2d, Evidence § 278.
[4, 5] 75 Am Jur 2d, Trial §§ 575, 615, 701.
[6] 5 Am Jur 2d, Appeal and Error § 772.
  7 Am Jur 2d, Attorneys at Law § 178.
[7, 8] 21 Am Jur 2d, Criminal Law §§ 243-245, 277.
  Supreme Court's views of Fifth Amendment's double jeopardy
    clause pertinent to or applied in federal criminal cases. 50 L Ed
    2d 830.
[8] 40 Am Jur 2d, Homicide § 568 *et seq.*
[8, 10] 27 Am Jur 2d, Escape, Prison Breaking, and Rescue § 17.
[9] 41 Am Jur 2d, Indictments and Informations §§ 68 *et seq.*, 89.
[10] 73 Am Jur 2d, Statutes § 119 *et seq.*

ing of the phrase "as a hostage", where the defendant neither requested such an instruction nor objected to the lack of it, did not constitute a miscarriage of justice requiring reversal.

3. The trial court did not abuse its discretion in denying defendant's request, on the fifth day of trial, to dismiss his appointed counsel and to appoint substitute counsel.

4. Conviction of both escape from jail through violence and assault with intent to commit murder, based upon the same evidence, did not violate defendant's constitutional protection against double jeopardy. Each of the statutes serves to protect a separate interest, and neither crime is an included offense of the other, thus the legislative intent was to provide multiple punishments. Furthermore, the jury may have, in fact, convicted defendant of both offenses based on different facts.

5. There was no requirement that the information charging defendant with taking a hostage should have stated that the sentence imposed for conviction of that offense is mandatorily consecutive.

6. The statute prohibiting jail break or escape through violence and assaults on jail employees or guards does not violate the title-object or single-object clauses of the Michigan Constitution.

Affirmed.

1. CRIMINAL LAW — HOSTAGES — INTENT TO TAKE HOSTAGE.

The phrase "as a hostage" as used in the statute punishing the taking of a hostage by a prisoner implies the unlawful taking, restraining or confining of a person with the intent that the person, or victim, be held for security for the performance, or forbearance, of some act by a third person; conviction under this statute requires only an intent or purpose to use the victim as a hostage and does not require that the defendant have actually used the victim as a hostage (MCL 750.349a; MSA 28.581[1]).

2. CRIMINAL LAW — ELEMENT OF OFFENSE — SUFFICIENCY OF EVIDENCE — APPEAL.

The standard of review applicable to a defendant's claim of insufficient evidence on an essential element of an offense is whether, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the element proven beyond a reasonable doubt.

3. CRIMINAL LAW — ELEMENT OF OFFENSE — INFERENCES.

An element of an offense may be found based on a reasonable inference drawn from the evidence.

4. CRIMINAL LAW — JURY INSTRUCTIONS — APPEAL.

Appellate review of a trial court's failure to instruct the jury on the meaning of a term used in a criminal statute is precluded where the defendant neither requested such an instruction nor objected to the absence of such an instruction unless the court's failure to so instruct the jury resulted in a miscarriage of justice.

5. CRIMINAL LAW — JURY INSTRUCTIONS — DEFINITION OF TERMS — HOSTAGES.

Failure of a trial court to define to the jury a term which is generally familiar to lay persons and is susceptible of ordinary comprehension is not error requiring reversal; the term "hostage" is such a term.

6. CRIMINAL LAW — SUBSTITUTE COUNSEL — APPEAL.

Appointment of substitute counsel for a defendant is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process; a trial court's decision on a defendant's request for substitution will not be upset on appeal absent an abuse of the trial court's discretion.

7. CRIMINAL LAW — DOUBLE JEOPARDY — MULTIPLE PUNISHMENTS — LEGISLATIVE INTENT.

The determinative inquiry, where a defendant claims a violation of the protection against "factual" double jeopardy because he was convicted of more than one offense based on the same evidence, is whether the Legislature intended to allow multiple punishment for the offenses involved.

8. CRIMINAL LAW — ESCAPE — ASSAULT — DOUBLE JEOPARDY.

Conviction of escape from jail through violence and of assault with intent to commit murder, both based upon the same evidence, is not violative of legislative intent and, thus, not violative of double jeopardy protections (MCL 750.83, 750.197c; MSA 28.278, 28.394[3]).

9. CRIMINAL LAW — INFORMATIONS — PENALTY.

There is no requirement that the penalty for conviction of a crime be stated on the information charging the crime (MCL 767.45; MSA 28.985).

10. CRIMINAL LAW — CONSTITUTIONAL LAW — STATUTES — JAIL BREAK — ASSAULT ON JAIL EMPLOYEES.

The statute prohibiting jail break or escape through violence and assaults by prisoners on jail employees or guards does not violate the title-object and single-object clauses of the Michigan

Constitution (Const 1963, art 4, § 24; MCL 750.197c; MSA 28.394[3]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert L. Kaczmarek,* Prosecuting Attorney, and *Annette M. Gray,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Susan J. Smith),* for defendant on appeal.

Before: MacKenzie, P.J., and Beasley and J. Kirwan,* JJ.

MacKenzie, P.J. Defendant appeals as of right his conviction after a jury trial of escape from jail through violence, MCL 750.197c; MSA 28.394(3); unarmed robbery, MCL 750.530; MSA 28.798; assault with intent to commit murder, MCL 750.83; MSA 28.278; taking another as a hostage, MCL 750.349a; MSA 28.581(1); assault with a dangerous weapon, MCL 750.82; MSA 28.277; assault with intent to commit a felony, MCL 750.87; MSA 28.282; entry without breaking with intent to commit larceny, MCL 750.111; MSA 28.306; armed robbery, MCL 750.529; MSA 28.797; kidnapping, MCL 750.349; MSA 28.581; unlawfully driving away an automobile, MCL 750.413; MSA 28.645; and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2).

The series of offenses began when defendant, who was awaiting trial on other charges, was being transported by Deputy McRae from the Saginaw County Courthouse back to the jail through a security elevator and tunnel which connected the courthouse to the jail. Deputy McRae testified that he handcuffed defendant's hands in front, and he and defendant then entered

* Circuit judge, sitting on the Court of Appeals by assignment.

the security elevator. When the elevator reached the basement where the tunnel was located, just as the elevator doors were opening, defendant kicked Deputy McRae three times in the groin. Still inside the elevator, defendant then put the handcuffs around McRae's neck and began choking him. McRae stated that he managed to drag himself to the alarm button inside the elevator and hit the button twice. Struggling, defendant and McRae exited from the elevator, spilling out onto the basement floor. Defendant repeatedly demanded that McRae give him his gun. McRae refused, but during the struggle he felt defendant removing the gun from his holster. McRae heard the gun being cocked, hit the gun with his hand, and the gun discharged.

McRae recalled then being on his knees with defendant holding the cocked gun to his head and demanding that McRae get him out or he was going to kill him. Defendant ordered McRae to unlock a security door leading to the public door of the courthouse, but McRae feigned that his key did not fit. Defendant also asked McRae for additional ammunition, but McRae stated he didn't have any more rounds. McRae testified that defendant then said, "Turn around, I'm going to kill you", and defendant proceeded to hit McRae in the head with the gun. McRae testified that the next thing he could recall was lying next to the wall on the second floor of the courthouse with defendant standing next to him but not touching him in any way, and then being in a courtroom announcing to the people therein that a prisoner had just escaped. McRae testified that the only way he could have arrived at the second floor of the courthouse was via the security elevator, although he had no recollection of entering into or being in the elevator. McRae also testified that there was an alarm

button in the downstairs area just across from the elevator, but that he had not been able to reach that mechanism during the struggle in the basement.

In his testimony, defendant admitted to attempting to escape from McRae. According to defendant, McRae attempted to stop him and a struggle ensued. Defendant testified that McRae went for his gun and that he struggled with McRae to prevent him from removing the gun from his holster. During the struggle, the gun went off, wounding McRae. Defendant then removed his handcuffs and took possession of the revolver. Defendant denied any intention of shooting McRae, testifying that had he so desired he could have killed McRae. Defendant also testified that he took the elevator to the second floor and fled the building, and that he had not taken McRae with him in the elevator.

The prosecution's evidence showed that after fleeing the courthouse, defendant encountered Theophile Louchart, Jr., a postal employee. Defendant forced his way into Louchart's Jeep and instructed Louchart to drive. Louchart informed defendant that he was unable to comply with the request. Louchart attempted to convince defendant that he did not have a key to the vehicle. Defendant pulled the revolver and shot Louchart, wounding Louchart in the arm. Louchart then exited from the vehicle and ran for help.

The prosecution's evidence further showed that defendant subsequently entered the house of Anna Gosen. Gosen testified that she discovered defendant standing in her bedroom holding a gun, and defendant told her she would not be harmed if she followed his instructions. Defendant asked Gosen for clothes and money, and she complied. Defendant later demanded that Gosen drive him out of town, she complied, and when they approached

Detroit defendant assumed the driving. After arriving in Detroit, defendant exited from the vehicle and told Gosen she was free to leave. On cross-examination of defendant at the trial, the following exchange occurred:

> *"[Prosecutor]:* Is it in fact the case that you wanted Mrs. Gosen to go with you so you would have a hostage to use in the event you ran into a police roadblock?
>
> *"[Defendant]:* I don't see the gun would have did any good. It's been a proven fact that they don't start knowing what they going to do to you because you got hostages."

Arising out of the events with McRae were defendant's convictions for escape from jail through violence, unarmed robbery (for taking McRae's gun), assault with intent to commit murder, and taking a hostage. Arising out of the incident with Louchart were defendant's convictions for assault with a dangerous weapon (for shooting Louchart in the arm) and assault with intent to commit a felony (kidnapping). Defendant's convictions for entering an occupied dwelling with intent to commit a larceny, armed robbery, kidnapping, and unlawfully driving away an automobile were in connection with the events involving Gosen.

Defendant raises five issues on appeal which we will address *seriatim.*

# I

Defendant claims that there was insufficient evidence to support his conviction of taking Deputy McRae as a hostage in contravention of MCL 750.349a; MSA 28.581(1), which provides as follows:

"A person imprisoned in any penal or correctional institution located in this state who takes, holds, carries away, decoys, entices away or secretes another person as a hostage by means of threats, coercion, intimidation or physical force is guilty of a felony and shall be imprisoned in the state prison for life, or any term of years, which shall be served as a consecutive sentence."

Resolution of this issue requires us to define the meaning of the language "as a hostage" in the above statute, a task which has not heretofore been undertaken by an appellate court of this state. However, we find guiding precedent in decisions from other jurisdictions.

In *State v Crump,* 82 NM 487; 484 P2d 329 (1971), the Supreme Court of New Mexico held that "hostage", as used in New Mexico's kidnapping statute,

"implies the unlawful taking, restraining or confining of a person with the intent that the person, or victim, be held as security for the performance, or forbearance, of some act by a third person." *State v Crump,* 82 NM 493; 484 P2d 335.

The *Crump* court rejected a broader definition which would have embraced not only demands made by the defendant on a third person, but also demands made directly on the victim. *State v Crump, supra.* Courts from other states have adopted as their own the definition of "hostage" set forth in *Crump. State v Stone,* 122 Ariz 304; 594 P2d 558 (Ariz App, 1979); *State v Littlefield,* 389 A2d 16 (Me, 1978); *State v Lee,* 33 NC App 162; 234 SE2d 482 (1977).

We likewise adopt the definition of "hostage" articulated in *State v Crump, supra.* We further hold that the phrase "as a hostage" employed in MCL 750.349a; MSA 28.581(1) requires only an

intent or purpose to use the victim as a hostage and does not require for conviction that the defendant have actually used the victim as a hostage. We so hold in view of the statutory language "takes, holds, carries away, decoys, entices away or secretes another person as a hostage". This language reflects that the taking or holding, etc. is the requisite act and "as a hostage" merely denotes the requisite intent or purpose which must accompany the taking or holding of the victim.

We must now determine whether there was sufficient evidence for the jury to find that defendant took McRae into the elevator and up to the second floor of the courthouse with the intention or purpose of using McRae as security for the performance or forbearance of some act by a third person. The standard of review applicable to defendant's claim of insufficient evidence is whether, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the element of intent to use as a hostage proven beyond a reasonable doubt. *People v Delongchamps,* 103 Mich App 151, 159; 302 NW2d 626 (1981), *lv den* 412 Mich 857 (1981). The requisite element of intent to use as a hostage may be found based on a reasonable inference drawn from the evidence. *People v Hunten,* 115 Mich App 167, 171; 320 NW2d 68 (1982); *People v McWilson,* 104 Mich App 550, 555; 305 NW2d 536 (1981), *lv den* 412 Mich 865 (1981).

We find that, viewing the evidence in a light most favorable to the prosecution, the jury could have inferred beyond a reasonable doubt that defendant took Deputy McRae into the elevator with the intent to use him as a hostage if necessary. In order to effectuate his escape from the second floor of the building, defendant had to make his way through a populated public area.

Moreover, on cross-examination regarding the incident with Ms. Gosen, defendant himself testified that possession of a hostage would be more useful than a gun in resisting capture by the police. This testimony by defendant reflecting his readiness to use Ms. Gosen as a hostage if necessary supports an inference that defendant also intended to use Deputy McRae as a hostage if the need arose. Compare *State v Littlefield, supra.* While the jury might have found that defendant took McRae merely to prevent McRae from sounding the alarm in the basement and revealing defendant's escape, the evidence did not preclude the jury from finding otherwise. Compare *State v Littlefield, supra.* Indeed, the fact that there was also an alarm in the elevator itself, and that the second floor contained numerous other persons whom McRae could inform of the escape, greatly undermined the likelihood that defendant took McRae into the elevator merely to prevent McRae from alerting others of defendant's escape.

Defendant also contends that the trial court committed reversible error by failing to instruct the jury as to the meaning of the phrase "as a hostage" as used in MCL 750.349a; MSA 28.581(1). Defendant never requested or objected to the absence of an instruction defining "hostage", and therefore appellate review is precluded unless the court's failure to so instruct resulted in a miscarriage of justice. GCR 1963, 516.2; *People v Avery,* 114 Mich App 159, 168; 318 NW2d 685 (1982), *lv den* 417 Mich 861 (1983). We find no miscarriage of justice in the present case. The trial court in its instructions read to the jury the pertinent language of the hostage statute, MCL 750.349a; MSA 28.581(1), and clearly conveyed to the jury that an essential element of the offense was the intent to use Deputy McRae as a hostage. Compare *People v*

*Hunt,* 120 Mich App 736, 741-742; 327 NW2d 547 (1982). It is not reversible error for a court to fail to define a term which is generally familiar to lay persons and is susceptible of ordinary comprehension. *People v MacPherson,* 323 Mich 438, 449; 35 NW2d 376 (1949); *People v Plummer,* 37 Mich App 657, 661; 195 NW2d 328 (1972). In *State v Carnes,* 97 NM 76; 636 P2d 895 (Ct App, 1981), the New Mexico Court of Appeals held that "hostage" was a nontechnical term having a common meaning and found no reversible error in the trial court's failure to instruct on the *Crump* definition of that term. We likewise find the term "hostage" to be one generally familiar to and comprehensible by lay persons, and therefore the trial court's failure to instruct on the *Crump* definition did not constitute a miscarriage of justice requiring reversal.

## II

Defendant next claims that, since he made it clear on the record that there had been a breakdown in the attorney-client relationship, the trial court abused its discretion by failing to make further inquiries and by refusing defendant's request that appointed defense counsel be dismissed. The record reflects that the court gave defendant a full opportunity to express his complaints. While the court made no express finding as to whether or not there existed such a breakdown in the attorney-client relationship as to justify appointment of substitute counsel, reversal is required only if the record supports defendant's claim that appointment of substitute counsel was warranted. *People v Ginther,* 390 Mich 436, 442; 212 NW2d 922 (1973). Appointment of substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt

the judicial process and a trial court's decision on a request for substitution will not be upset on appeal absent an abuse of discretion. *People v Meyers (On Remand)*, 124 Mich App 148, 165; 335 NW2d 189 (1983).

We find no abuse of discretion in the instant case. We first note that defendant's request that defense counsel be dismissed came after the prosecution had rested its case and on the fifth day of trial. Hence, appointment of substitute counsel would have significantly disrupted the judicial process by necessitating an adjournment in order to permit substitute counsel to become familiar with the case and the trial proceedings held thus far. Defendant's complaint pertaining to his observation of a discussion during a recess between defense counsel and the prosecutor did not amount to good cause. As established by the explanations of defense counsel and the prosecutor, the nature of their discussion was not prejudicial to defendant nor grounds for defendant to have a reasonable belief that he could not trust defense counsel. Defendant also related to the trial judge that he believed defense counsel harbored ill feelings toward him for defendant's bringing the discussion at recess to the court's attention. Although at the time defendant conveyed his complaint to the trial court defense counsel expressed some displeasure with defendant for questioning his loyalty to defendant, subsequent trial proceedings reflected no communication breakdown between defendant and counsel nor any lack of diligence by defense counsel.

## III

Defendant contends that his conviction of both escape from jail through violence and assault with

intent to commit murder violated his right against double jeopardy. More particularly, defendant argues that conviction of both offenses violated the state constitutional protection against "factual" double jeopardy because the same evidence which was used to establish the "use of violence, threats of violence, or dangerous weapons" element of the escape charge, MCL 750.197c; MSA 28.394(3), was also used to support the assault with intent to murder charge, MCL 750.83; MSA 28.278.

We cannot agree. In *People v Wakeford,* 418 Mich 95; 341 NW2d 68 (1983), the Supreme Court disavowed earlier case law suggesting that the state constitutional guarantee against double jeopardy is violated where the defendant is multiply punished based on the same evidence or for a single wrongful act:

"Viewed in this light, defendant's claim of factual double jeopardy depends not upon whether most or all of the same evidence was utilized to convict of both counts of armed robbery, but whether the legislative intent or statutory purpose was that two convictions should result. To the extent certain language in *Martin, Stewart,* and *Jankowski*[1] suggests that the critical test is whether the defendant committed 'one single wrongful act', we specifically disavow that test. It is up to the Legislature, not this Court, to determine what constitutes a single offense. The so-called 'factual double jeopardy' doctrine simply asks whether the Legislature authorized multiple punishment under the circumstances." *People v Wakeford, supra,* pp 110-111.

See also *People v Robideau,* 419 Mich 458; 355 NW2d 592 (1984). The determinative inquiry here, then, is whether the Legislature intended to allow multiple punishment for both escape from jail

---

[1] *People v Martin,* 398 Mich 303; 247 NW2d 303 (1976), *People v Stewart (On Rehearing),* 400 Mich 540; 256 NW2d 31 (1977), and *People v Jankowski,* 408 Mich 79; 289 NW2d 674 (1980).

through violence and assault with intent to commit murder. This inquiry necessitates reference to the subject, language, and history of the two statutes. *Robideau, supra.*

The immediate predecessor to the current MCL 750.197c; MSA 28.394(3) prohibited only a break or escape from jail through the use or threat of violence or dangerous weapons. This statute was amended by 1976 PA 188, § 1, to further prohibit assaults on jail employees. See *People v Boyd,* 102 Mich App 112; 300 NW2d 760 (1980). While this section prohibits two distinct acts, we are concerned only with the language with which defendant was charged—escape from jail through the use of violence. We therefore do not address the issue of whether an accused could be convicted of both assault on a jail employee under MCL 750.197c; MSA 28.394(3) and assault with intent to commit murder under MCL 750.83; MSA 28.278 without violating the double jeopardy clause.

After reviewing the two statutes involved herein we conclude that conviction under both is not violative of legislative intent. MCL 750.197c; MSA 28.394(3) is obviously aimed at preventing violent jail breaks or escapes by those confined within. MCL 750.83; MSA 28.278, on the other hand, prohibits assaults in which murder is the intended consequence. Each statute serves to protect a separate social norm—one seeks to discourage escapes from jail, the other to discourage murder. Statutes such as these which prohibit conduct violative of distinct social norms generally permit multiple punishments. *Robideau, supra.*

Nor do we find, after reviewing the separate elements of each offense, *cf.* CJI 13:8:01 with CJI 17:2:01, that either crime is a lesser included or cognate offense of the other. See generally *People v Ora Jones,* 395 Mich 379, 387-390; 236

NW2d 461 (1975). To the contrary, we find it very doubtful that the Legislature intended the crime of assault with intent to commit murder, which carries a punishment of up to life imprisonment, MCL 750.83; MSA 28.278, to be subsumed by the crime of escape from jail through violence, which is punishable by only four years in prison. MCL 750.503; MSA 28.771. See *Robideau, supra.*

Furthermore, even if the "same evidence" approach to state constitutional "factual" double jeopardy were still viable after *People v Wakeford,* there would still be no double jeopardy violation in the instant case. In the pre-*Wakeford* case of *People v Carter,* 415 Mich 558, 586-588; 330 NW2d 314 (1982), the Court emphasized that the focus in "factual" double jeopardy is not on what the jury could or did conclude, but rather on what the jury necessarily found. If the factual proofs presented were such that the jury may have convicted of both offenses based on completely different facts, no double jeopardy violation exists. *People v Carter, supra,* p 588. Here, the jury may have found the "through violence" element of the escape charge satisfied based on defendant's kicking and choking of Deputy McRae. The jury did not necessarily use the factual proofs establishing assault with intent to commit murder, *i.e.,* defendant's threat to kill and subsequent pistol whipping of Deputy McRae, in finding defendant guilty of escape from jail through violence. *People v Anderson,* 83 Mich App 744, 749; 269 NW2d 288 (1978), *lv den* 405 Mich 812 (1979), relied on by defendant, is distinguishable since there the defendant's striking of the prison officer was the only evidence of violence, and hence was necessarily used to convict the defendant of both assaulting a police officer and breaking jail through violence. In addition, due to the post-*Anderson* decisions of *Wakeford*

and *Robideau* which focus solely on the question of legislative intent in determining double jeopardy claims, we doubt the continued validity of *Anderson* on its own facts.

## IV

Defendant next argues that the information was defective in that it did not state that the sentence for a conviction of taking a hostage, in violation of MCL 750.349a; MSA 28.581(1), is mandatorily consecutive, and consequently that his consecutive sentence for this conviction violated his right to due process. This claim is without merit. We know of no authority, nor does defendant cite us to any, requiring that the penalty for conviction of a crime be stated on the information. See MCL 767.45; MSA 28.985. In any event, the information did cite to the hostage statute, MCL 750.349a; MSA 28.581(1), wherein the mandatory consecutive sentence provision is found. Moreover, the record does not disclose that defendant ever objected to this alleged defect in the information, and no manifest injustice requiring reversal exists in this case since the alleged defect could have been corrected by amendment without prejudice to defendant upon a timely objection. *People v Covington,* 132 Mich App 79, 86-87; 346 NW2d 903 (1984).

## V

Defendant's final claim on appeal is that MCL 750.197c; MSA 28.394(3), prohibiting jail break or escape through violence, as well as prohibiting assaults on known jail employees or guards, violates the title-object and single-object clauses of

the Michigan Constitution, Const 1963, art 4, § 24. This argument has previously been addressed by this Court and held to be without merit. *People v Wingo,* 95 Mich App 101; 290 NW2d 93 (1980), *lv den* 410 Mich 880 (1981); *People v Bellafant,* 105 Mich App 788, 790; 307 NW2d 422 (1981).

Affirmed.