*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

ALIZE ZACHARY DWAYNE MONTAGUE,

       Defendant-Appellant.

FOR PUBLICATION
July 1, 2021

Nos. 352089; 352090
Luce Circuit Court
LC Nos. 2017-001315-FC
          2017-001314-FC

Before: MURRAY, C.J., and FORT HOOD and GLEICHER, JJ.

GLEICHER, J. (*dissenting*)

Defendant Alize Montague was convicted of two crimes that share a common element: taking a hostage. The trial court incorrectly defined the word "hostage" when instructing the jury. The majority acknowledges this error but deems it harmless, finding that the same result would have obtained had proper instructions been given. I respectfully disagree. The court's error fundamentally altered the intent element of the crimes and did not fairly present the issues to be tried or permit Montague to pursue a potentially viable defense.

The correct definition of "hostage" conveys that a hostage is a person who is being held as security "for an act or forbearance by a third person." The given instruction eliminated the third person requirement altogether, despite that defense counsel specifically requested that the jury be informed of the correct definition. The trial court instead gave the prosecution's version of the instruction, which permitted the jury to convict if it found that Montague intended only that the *victim* would acquiesce to his demands.

Because the instruction as given negated an intent ingredient required under the law, it did not fairly present the issue to be tried regarding the charges of prisoner taking a hostage, MCL 750.349a, and kidnapping, MCL 750.249. No evidence supports that Montague intended to hold the victim as security for an act by a third person. I would vacate Montague's conviction for prisoner taking a hostage, and remand for a new trial regarding the kidnapping charge.

-1-

## I. FACTUAL AND PROCEDURAL BACKGROUND

Montague escaped from prison and fled to a hotel. Heather Thornton, the hotel night clerk, supplied the evidence used by the prosecutor to establish the crimes of prisoner taking a hostage and kidnapping. Thornton testified that after discovering Montague in the hotel lobby in the middle of the night, she directed him to a lobby telephone and attempted to lock herself in a back office. Montague kicked down the door to the office, Thornton recounted, and threatened her with a box cutter. While wielding the box cutter, Montague took Thornton's cell phone, car keys, and some cash. Thornton described that with the box cutter still in hand, Montague instructed her to accompany him as he left the hotel and headed for Thornton's car. As she exited the hotel ahead of Montague, Thornton spotted police vehicles pulling into the driveway and sprinted toward them. Montague ran to Thornton's car, where he was apprehended.

The prosecutor charged Montague with escape from prison, MCL 750.193, prisoner taking a hostage, MCL 750.349a, kidnapping, MCL 750.249, armed robbery, MCL750.529, and assault with a dangerous weapon, MCL 750.82. Montague admitted to the escape. And apparently the jury did not accept as true some portions of Thornton's testimony, as despite her graphic description of her experience, the jurors acquitted Montague of having assaulted or robbed her.[1] More pertinently, at no point in her testimony did Thornton (or any other witness) claim that Montague had mentioned, hinted, or even inferred that he intended to hold her as security for the performance of an act by a third party.

Before trial, defense counsel moved to quash the charges of prisoner taking a hostage and kidnapping. He contended that as to both, no evidence supported that Montague intended to take Thornton as a hostage as that term was defined in *People v Cousins*, 139 Mich App 583; 363 NW2d 285 (1984). In *Cousins*, 139 Mich App at 590, this Court adopted the definition of taking a hostage provided in *State v Crump*, 82 NM 487, 493; 484 P2d 329 (1971): "the unlawful taking, restraining or confining of a person with the intent that the person, or victim, be held as security for the performance, or forbearance, of some act by a third person." In crafting this definition, the New Mexico Supreme Court had canvassed several dictionaries. Although *Cousins* is not necessarily binding on this Court, I agree with the majority's unstated conclusion that it remains valid. A number of other courts have also adopted the *Crump* definition of "hostage." See *State v Garcia*, 179 Wn2d 828, 840; 318 P3d 266 (2014); *Ingle v State*, 746 NE2d 927, 939 (Ind 2001); *State v Moore*, 315 NC 738, 746; 340 SE2d 401 (NC, 1986); *State v Stone*, 122 Ariz 304, 309; 594 P2d 558 (1979); *State v Littlefield*, 389 A2d 16, 21 (Maine 1978).

As the majority points out, the trial court *was* bound by *Cousins* and I concur that it abused its discretion by failing to correctly define "hostage" for the jury. But unlike the majority, I believe that this was not an inconsequential mistake. Taking a hostage is an essential element of both the prisoner taking a hostage and kidnapping statutes, and the trial court's instruction allowed the jury to convict without proof of the integral element of intent to involve a third party.

---

[1] The jury's verdict calls into question the majority's factual finding that Montague "was . . . violent towards Thornton when trying to obtain her phone and car keys."

-2-

The elements of the crime of prisoner taking a hostage, MCL 750.349a, are: (1) the defendant was imprisoned in a penal or correctional institution located in this state, (2) the defendant held, carried away, decoyed, enticed away or secreted another person as a hostage, (3) the defendant intended to take the other person as a hostage, and (4) the defendant did so by means of threats, coercion, intimidation or physical force. Properly defined, a hostage is a person unlawfully taken, restrained, or confined with the intent that the person be held as security for the performance or forbearance or some other act by a third party. The prosecution had to prove that Montague intended to take, restrain, or confine Thornton so that a third party would do or not do something.

Defense counsel argued in the motion to quash that the evidence supported that Montague attempted to take Thornton with him so that he could have access to her cell phone, as the device did not have a pin number and apparently required that Thornton personally swipe it to activate it. Counsel argued, "There is not testimony in the record that he intended to take her as a hostage, when looking at *Cousins* for the definition of hostage." The trial court rejected this argument, ruling as follows:

> The charge in Count 1, Prisoner taking a hostage, this Court finds, under the facts presented, the clear inferences allowed satisfies the meaning that Ms. Thornton was a hostage. She was held by the Defendant against her will, controlled through threats and the presence of a weapon. To suggest, under these circumstances, that she was not a hostage flies in the face of the facts. What the Prisoner's intent was can only be part of the picture, as the ultimate purposes of the Defendant may only have been determined by the ongoing series of events as they unfolded. Further, the Court finds, is that the impression of the victim cannot be discounted in this scenario. Suffice to say, this Court finds on the facts that the victim was a hostage.

The parties submitted proposed jury instructions to the court. Defense counsel offered a definition of hostage consistent with *Cousins*. The prosecution offered the definition adopted by the trial court: "Hostage means a person taken by force to secure the taker's demands." The court gave the jury the prosecutor's instruction.

## II. LEGAL ANALYSIS

## A. PRISONER TAKING A HOSTAGE

Conviction under the prisoner taking a hostage statute required proof that Montague intended to take Thornton as a hostage as security for an act or forbearance by a third party. Not only was the jury incorrectly instructed regarding the definition of hostage; no evidence supported that Montague intended to seize or hold Thornton for that purpose.

The majority holds that the trial court's instructional error was harmless, reasoning that the jury could have found that Montague took Thornton "as protection in case authorities showed up." This rationalization rests on pure speculation and conjecture and is unsupported by any actual evidence of record. The evidence demonstrates that the case was tried on the theory that Montague took Thornton to prevent *her* from contacting the police. Indeed, the prosecution's brief on appeal

-3-

concedes that Montague "was trying to save his own skin, trying to use Thornton in any way possible, and trying to prevent her from reaching out for help and turning him in to law enforcement." But the "third party" aspect of the proper instruction denotes that the restrained person must be held to entice someone *else* to act. The defendant's intent must go well beyond restraining the victim and obtaining her submission to his demands, which is all that the instruction as given required. The correct instruction encompasses the use of the victim to compel or persuade a third party to become involved in a defendant's crime.

The trial court's instruction allowed the jury to conclude that Thornton was a "hostage" because she complied with "the taker's demands" and because Montague intended that she comply. A correct instruction would have highlighted that Montague had to intend to restrain Thornton so that he could (for example) use her as a bargaining chip with a third party. Restraining her and compelling her to comply with his demands was not enough.

The prosecutor made no effort to present evidence supporting that Montague intended to obtain some sort of a concession, forbearance, or assistance from a third party. Rather, the prosecutor vigorously *resisted* the *Cousins* approach, arguing in his closing that Montague's intent to take Thornton's cell phone and her car were enough to satisfy the prisoner taking a hostage statute:

> The second element is that the Defendant took, carried away, decoyed, enticed, or secreted Heather Thornton as a hostage. Now, hostage is defined to you as: A person taken by force, to secure the taker's demands. *Now, we don't know exactly what those demands were.* The Defendant never verbalized those demands. At leas[t] we don't have any testimony of that. What we do know, is that Ms. Thornton testified that he said, you're coming with me. He had a knife in his hand. He motions with the knife, you're coming with me, or get the object out from under the bed. Did that a couple different times.

> We also know that he had Ms. Thornton's cellphone. And that cellphone, based on her testimony, is an item that could not be used, without a special swipe code. He didn't know what that was. She knew what that was. *He needed her, to open that cellphone, so he could call.* He had a phone in the lobby, that was dialed for him, and he actually started calling on. But, for one reason or another, he decided that wasn't good enough. And he went back, and kicked the door in, where Ms. Thornton was. I guess he didn't have time to finish that call. There were more pressing matters to him.

> *He also needed Ms. Thornton's car keys.* And whether or not he thought he could get into the car without her, I don't know for sure. But, those are three reasons why, I would submit to you that he needed Ms. Thornton. He needed to take her to secure those three demands.

> &ast; &ast; &ast;

> He is taking Ms. Thornton to secure his demands. We he needs done, to aid in his escape. [Emphasis added.]

By omitting any reference to the role of a third party to Montague's intent, the trial court's instruction misinformed the jury of a critical component of the crime of prisoner taking a hostage. The intent requirement conveyed by the instruction, buttressed by the prosecutor's argument, was satisfied by Montague's intent to take Thornton's car or her phone. But that intent simply did not suffice under *Cousins*, because the word "hostage" contemplates something more than an intent to restrain Thornton's freedom of movement, or to take her possessions.

This Court has explained that "[j]ury instructions must include all the elements of the charged offense and must not exclude material issues, defenses, and theories if the evidence supports them." *People v Canales*, 243 Mich App 571, 574; 624 NW2d 439 (2000). In addition to supplying the jury with an incorrect element, the trial court eliminated Montague's defense that he had no intent to use Thornton to extract something from a third party. That defense became irrelevant when the court adopted the prosecution's version of the word "hostage." The denial of a defense constitutes a constitutional violation. See *People v Kurr*, 253 Mich App 317, 326-327; 654 NW2d 651 (2002) ("Instructional errors that directly affect a defendant's theory of defense can infringe a defendant's due process right to present a defense.").[2]

But I would not simply remand for a new trial on this charge. In my view, the prosecution failed to produce any evidence supporting—directly or inferentially—that Montague intended to use Thornton as a hostage. The prosecutor admitted as much during his closing argument ("Now, we don't know exactly what those demands were. The Defendant never verbalized those demands. At leas[t] we don't have any testimony of that."). There is simply no record evidence that Montague intended to hold or detain Thornton as security for the performance, or the forbearance,

---

[2] The majority's valiant effort to salvage the prisoner taking a hostage verdict conflates the standard for assessing evidentiary sufficiency with the standard for determining whether an erroneous instruction mandates a new trial. Here, the incorrect instruction omitted an essential part of the intent element of the crime. Therefore, it misled the jury and did not fairly present the issue to be tried. See *People v Dumas*, 454 Mich 390, 396, 407; 563 NW2d 31 (1997). A trial court must explain the law correctly so that the jury may "apply the law to the facts," *United States v Gaudin*, 515 US 506, 514; 115 S Ct 2310; 132 L Ed 2d 444 (1995), and determine the defendant's guilt as to every element of the crime charged, *id*. at 510. When an instruction omits an element of an offense, the harmless error standard applies. "[A]n instructional error regarding one element of a crime, whether by misdescription or omission, is subject to a harmless error analysis." *People v Duncan*, 462 Mich 47, 54; 610 NW2d 551 (2000). Even if the error here was nonconstitutional in nature, "a preserved, nonconstitutional error is not a ground for reversal unless after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999). The "more probable than not" standard is easily met here. The trial court foreclosed Montague's ability to argue that he did not detain Thornton to compel a third party to act or refrain from acting; he detained her for her cell phone. Concomitantly, the trial court permitted the jury to convict based solely on the evidence that Montague had detained Thornton. As instructed, the jury had no alternative by to convict. Accordingly, I would hold that the error likely was outcome determinative.

of some act by a third person. Accordingly, his conviction for prisoner taking a hostage should be vacated.

## B. KIDNAPPING

After being instructed that an element of the kidnapping charge required the prosecution to prove that Montague intended to "use [Thornton] as a shield of hostage," the jury convicted Montague of kidnapping Thornton under MCL 750.249. This instruction is accurate (see M Crim JI 19.1), but the jury was provided with no definition of "hostage" other than the one accompanying the prisoner taking a hostage charge. The defect in that instruction infected the kidnapping conviction, in my view.

It is certainly possible that a jury could have determined that Montague intended to use Thornton as a shield as they exited the hotel, despite that the evidence of that specific intent would be entirely inferential and speculative. But there is no way to determine whether some jurors decided that Montague did *not* intend to use Thornton as a shield, but rather intended to hold her as a hostage as that term was improperly defined by the trial court. "A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). The improper instruction regarding the meaning of "hostage" likely led the jury "to tie one conviction to another." *People v Duncan*, 462 Mich 47, 54; 610 NW2d 551 (2000).

The evidence of Montague's intent in ordering Thornton to accompany him as they exited the hotel is murky at best. I would hold that more probably than not, the trial court's failure to properly instruct the jury regarding the meaning of the word "hostage" was outcome determinative regarding the kidnaping conviction as well as the conviction for prisoner taking a hostage. The instructional error undermines the reliability of the jury's verdict; we have no way of knowing whether the jury convicted Montague of kidnapping based on an incorrect understanding of the meaning of "hostage" or because the jurors concluded that Montague used Thornton as a shield. This fundamental uncertainty undermines the reliability of the verdict. I would remand for a new trial on this charge.

/s/ Elizabeth L. Gleicher