PEOPLE v HUNTEN

Docket No. 55596. Submitted June 6, 1981, at Grand Rapids.—De-
cided April 8, 1982.

David Hunten was charged with possession of a controlled sub-
stance, pentazocine. The Muskegon Circuit Court, Ronald H.
Pannucci, J., entered an order quashing the information and
dismissing the charge. The trial court found that as a matter of
law the intentional possession of pentazocine could not be
established because there were no facts from which a reason-
able inference could be drawn establishing that the amount of
pentazocine was a usable amount. The people appeal. *Held:*

The mere presence of a minute quantity of a controlled
substance which is invisible to the naked eye, standing alone, is
insufficient to support an inference of criminal scienter. Here,
the controlled substance, itself, was not visible and there is
nothing from which an inference could be drawn that the
defendant was aware of the presence and character of the
particular substance or was intentionally and consciously in
possession of it.

Affirmed.

1. Controlled Substances — Possession — Knowledge of Posses-
sion.

The possession of any amount of a proscribed controlled sub-
stance is sufficient to constitute possession for purposes of a
criminal offense for possession of that controlled substance;
however, knowledge of the presence of a controlled substance is
an essential element of a criminal offense involving possession
of that substance.

References for Points in Headnotes
[1] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 16, 17, 21, 27.13,
45, 47.
What constitutes "possession" of a narcotic drug proscribed by § 2
of the Uniform Narcotic Drug Act. 91 ALR2d 810.
[2] 21 Am Jur 2d, Criminal Law § 516.
21A Am Jur 2d, Criminal Law § 782.
75 Am Jur 2d, Trial §§ 492, 556.

2. CRIMINAL LAW — BURDEN OF PROOF.

> The prosecution in a criminal case must establish the essential elements of the crime beyond a reasonable doubt and if the prosecution does not do so, a directed verdict of acquittal or a motion to dismiss should be granted; reasonable inferences arising from the evidence may constitute satisfactory proof of the elements of the offense.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Gerald D. Warner,* Prosecuting Attorney, and *Gerald W. Gibbs,* Chief Trial Prosecuting Attorney, for the people.

*Simon, Fried, Cohn & Sapperstein* (by *Thomas M. Loeb),* for defendant on appeal.

Before: D. F. WALSH, P.J., and MACKENZIE and J. R. ERNST,* JJ.

PER CURIAM. Defendant, an inmate at the Muskegon Correctional Facility, was charged with the felony of possession of a controlled substance, pentazocine, in violation of MCL 333.7403(1) and (2)(b); MSA 14.15(7403)(1) and (2)(b). The people appeal as of right a November 26, 1980, order of the Muskegon County Circuit Court quashing the information and dismissing the charge.

Following a fight in the defendant's cell, a routine search of the cell was conducted. A needle, syringe and small pipe were discovered in the tongue area of the defendant's shoe. The shoe had been dismantled and rearranged to form a secret compartment.

A laboratory report introduced as an exhibit verified that the controlled substance, pentazocine, was found in the syringe.

At a hearing before the trial court on the defendant's motion to dismiss, a Michigan State Police

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Crime Laboratory scientist testified that he could see nothing inside of the syringe or on the needle with the naked eye. He further testified that there appeared to be a dried substance near the base of the needle cover or sheath. By washing out the syringe with methanol and performing tests on the substance, the laboratory analyst was able to determine that pentazocine was present in the syringe. Similar testing of the dried substance found on the sheath also disclosed that material to be pentazocine. All of the suspect substances found to be pentazocine were consumed in the testing process.

The trial court found that as a matter of law the intentional possession of pentazocine could not be established. The court determined that there were no facts from which a reasonable inference could be drawn establishing that the amount of pentazocine was the remnant of a usable amount. Finally, the court ruled that the amount of pentazocine found in the syringe was not harmful, and thus its possession was not intended by the Legislature to be penalized.

Both the people and the defendant suggest that the instant case confronts the issue left undecided by the Supreme Court in *People v Harrington,* 396 Mich 33, 49; 238 NW2d 20 (1976). In *Harrington,* the Court adopted the "visible to the naked eye" test and closed with the comment:

"We leave open the question of whether it is possible to sustain a conviction if the amount involved is not visible."

Indeed, the people argue that "[i]t would be unfortunate if this court concluded that the amount scraped off the needle sheath was 'visible' and thus avoided the question". However, this appeal does

not result from a *conviction* for the possession of an invisible amount of a controlled substance.

The majority in *Harrington, supra,* 49, ruled as follows:

"In this case defendant was found in possession of bottle caps with heroin residue apparent to the naked eye. We hold that such possession is in violation of MCLA 335.153; MSA 18.1123 which makes it a felony if '[a]ny person not having a license * * * shall possess or have under his or her control any narcotic drug'.

"This is not the kind of case where scrapings are taken from the inside of a coat pocket, or a plastic box on a dresser, *People v Pippin,* 16 AD2d 635; 227 NYS2d 164 (1962). Although the evidence was part of paraphernalia which, arguably, might have been the only thing defendant thought he was hiding, the white encrustation was there for him to see. Therefore, the *mens rea* threshold was successfully crossed by the prosecution.

"*Where there is an amount of narcotic visible to the naked eye, regardless of how much it is, there is a sufficient amount to permit prosecution.*" (Emphasis added.)

In view of the position adopted by the people on this issue, we accept the trial court's determination that the substance was not visible to the naked eye. The scrapings taken and analyzed in this case are analogous to the scrapings "taken from the inside of a coat pocket" to which the majority in *Harrington* alluded in making a distinction between quantities visible and invisible to the naked eye.

The majority view is that any amount of a proscribed controlled substance is sufficient to establish the offense of possession. However, the majority view is also that knowledge of the presence of the substance is an essential element of the offense. Where, as in *Harrington,* the sub-

stance is "there for [the defendant] to see", that evidence alone is sufficient to submit to a trier of fact the question of scienter, *i.e.,* whether the defendant had, in fact, knowledge of the presence of the substance.

The prosecution must establish the essential elements of a crime beyond a reasonable doubt. If the prosecution does not do so, a directed verdict of acquittal or a motion to dismiss must be granted. *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979). Reasonable inferences arising from the evidence may constitute satisfactory proof of the elements of the offense. *People v Kyllonen,* 66 Mich App 467; 239 NW2d 410 (1976).

In the present case there is evidence from which a trier of fact might find that defendant knowingly possessed drug paraphernalia; however, the controlled substance itself was not visible. There is nothing from which an inference can be drawn that the defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it.

We conclude that the mere presence of a minute quantity of a controlled substance which is invisible to the naked eye, standing alone, is insufficient to support an inference of criminal scienter. Other facts and circumstances might be established from which criminal scienter may be inferred. Such is not the present case.

Affirmed.