PEOPLE v RAMSDELL

Docket No. 197822. Submitted January 8, 1998, at Lansing. Decided June
23, 1998, at 9:00 A.M.

Bruce P. Ramsdell was convicted by a jury in the Jackson Circuit
Court, Charles A. Nelson, J., of being a prisoner in possession of
contraband (marijuana). The defendant appealed.

The Court of Appeals *held*:

1. The trial court did not err in refusing the defendant's request
that the jury be instructed that the defendant must have knowingly
possessed the marijuana in order to be convicted of the charged
offense and did not err in preventing the defendant from presenting
lack of such knowledge as a defense. Mere possession of contra-
band is sufficient for a conviction of prisoner in possession of con-
traband because the offense is a strict liability crime. MCL
800.281(4); MSA 28.1621(4), the statute that criminalizes the pos-
session of contraband by prisoners, does not expressly require
knowing or intentional possession of contraband. The general stat-
ute that proscribes the possession of controlled substances, MCL
333.7403; MSA 14.15(7403), expressly requires knowing or inten-
tional possession of a controlled substance for conviction. To con-
strue the statute that criminalizes the possession of contraband by
prisoners to require similar knowing or intentional possession
despite the absence of an express provision to that effect would be
to ignore the Legislature's intent in light of its presumed knowledge
of the general statute that proscribes the knowing or intentional
possession of controlled substances.

2. The trial court did not err in refusing to let the defendant pres-
ent duress as a defense. In his offer of proof outside the jury's pres-
ence, the defendant needed to establish, but did not, that he had
faced a present, imminent, and impending threatened danger.

3. The defendant was not denied the right to testify at trial. The
trial court expressly and unequivocally told the defendant that he
could testify on his own behalf.

4. The defendant, by not making a request in the trial court to be
provided with a transcript of the jury voir dire, failed to preserve
for appellate review his claim that MCR 6.425(F)(2)(a)(i), as previ-
ously in effect, was unconstitutional in generally precluding indi-

gent defendants from obtaining free transcripts of jury voir dire. In any event, such a transcript was available to counsel after appellate briefs were filed in this case, and appellate defense counsel is presumed to have had an opportunity to review the transcript and file an amended or supplemental brief had the transcript indicated error requiring reversal.

5. The defendant, as a prisoner, was not protected by the Fourth Amendment from unreasonable searches and seizures. The defendant's Fourth Amendment claims therefore are without merit.

6. The trial court did not err in failing to instruct sua sponte the jury with regard to unlawful use of marijuana as a lesser offense. Except for cases of first-degree murder, there is no duty to instruct sua sponte with regard to lesser included offenses. A proper request is a precondition to a trial court's being required to instruct with regard to a lesser misdemeanor offense, and a requested instruction regarding a lesser misdemeanor offense should be given only if supported by a rational view of the evidence adduced at trial. Here, the defendant made no request for an instruction regarding unlawful use of marijuana, and the evidence did not support such an instruction.

7. The prosecution, in its opening statement, did not improperly vouch for the credibility of those of its witnesses who were corrections officers by remarking that corrections officers are trained to be observant. Such remarks provided a reasonable explanation for why the corrections officers would have been alert to occurrences that likely would have escaped the notice of others.

8. Evidence of two judgments of sentence pursuant to which the defendant was incarcerated at the time of the offense at issue was properly admitted into evidence; the evidence was relevant to showing that the defendant was a prisoner, an essential element of the charged crime.

9. The trial court did not err in refusing the defendant's request to discharge his trial counsel and represent himself. The constitutional right to self-representation is not absolute. Where a defendant behaves in a disruptive manner and makes a motion to proceed pro se for surreptitious reasons, a trial court may deny self-representation. Here, the defendant desired to represent himself in order to present testimony in support of lack of knowing possession of the contraband and in support of duress despite the trial court's proper rulings barring such evidence. The trial court properly denied the request for self-representation.

10. Alleged ineffective assistance of trial counsel cannot provide a basis for relief because, in light of the overwhelming evidence of

guilt, there is no reasonable probability that, but for the alleged errors, the result of the trial would have been different.

Affirmed.

FITZGERALD, P.J., concurring in part and dissenting in part, stated that prisoner in possession of contraband should not be a strict liability crime. Knowing possession is an element of the crime in light of indications in *People v Norman*, 176 Mich App 271 (1989), and *People v Vaughn*, 200 Mich App 32 (1993), that the offense is a general ntent crime that requires scienter and in light of a general rule in this state of avoiding the presumption of strict liability in penal statutes. The defendant's conviction should be reversed and the matter should be remanded on the basis of the trial court's failure to properly instruct the jury that knowing possession of contraband is required for conviction of prisoner in possession of contraband.

1. CRIMINAL LAW — PRISONER IN POSSESSION OF CONTRABAND — STRICT LIABILITY.

A prisoner's possession of contraband need not be knowing or intentional in order for the prisoner to be convicted of being a prisoner in possession of contraband; the offense is a strict liability crime that requires proof beyond a reasonable doubt that the accused is a prisoner and that the prisoner had actual physical control of the contraband (MCL 800.281[4]; MSA 28.1621[4]).

2. CRIMINAL LAW — DEFENSES — DURESS.

Duress, as an affirmative defense, requires a showing by the defendant that the threatened danger was present, imminent, and impending.

3. CRIMINAL LAW — LESSER MISDEMEANOR OFFENSES — JURY INSTRUCTIONS.

A proper request for a jury instruction regarding a lesser misdemeanor offense is a precondition to a court's being required to give such an instruction; such an instruction should be given only if supported by a rational view of the evidence adduced at trial.

4. CONSTITUTIONAL LAW — CRIMINAL TRIALS — SELF-REPRESENTATION.

The constitutional right to self-representation at a criminal trial is not absolute; a court may deny a defendant's request for self-representation where the defendant behaves in a disruptive manner and makes the request for surreptitious reasons (US Const, Am VI; Const 1963, art 1, § 13).

5. CRIMINAL LAW — INEFFECTIVE ASSISTANCE OF COUNSEL.

Relief based on ineffective assistance of counsel requires a reasonable probability that, but for unprofessional errors by counsel, the result of the proceeding would have been different.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John G. McBain*, Prosecuting Attorney, and *Jerrold Schrotenboer*, Chief Appellate Attorney, for the people.

*Arthur James Rubiner*, for the defendant on appeal.

Before: FITZGERALD, P.J., and O'CONNELL and WHITBECK, JJ.

WHITBECK, J. A jury convicted defendant of the crime of prisoner in possession of contraband, MCL 800.281(4); MSA 28.1621(4). Defendant appeals as of right. We affirm.

### I. FACTUAL BACKGROUND

Defendant was imprisoned at the State Prison of Southern Michigan on January 7, 1996. Michael Allan, a corrections officer at the prison, testified that on that date he saw defendant in his cell cutting up small, white pieces of paper into one- to two-inch squares. Allan explained that in his experience as a prison guard such small squares of paper were used to package cocaine, heroin, and marijuana. Allan testified that defendant later placed a sheet over the bars of his cell in violation of prison rules and subsequently left his cell. Eventually, corrections officers decided to search defendant and found twelve folded pieces of paper that appeared to contain marijuana. A laboratory scientist with the state police tested the contents of one of these packets and confirmed that it contained marijuana.

Before trial, the trial court held that the crime of prisoner in possession of contraband is a strict liability crime. Accordingly, the trial court refused to allow

defendant to present evidence to support theories that he did not know the contents of the package and that he possessed the package under duress. Defendant offered no testimony on his behalf before the jury.

However, defendant did present testimony from himself and two other prisoners as part of an offer of proof outside the jury's presence. Tyrone Williams, who testified that he was serving a life sentence, said that he saw defendant on January 7, 1996. Williams claimed that he "forced" defendant to take a plastic bag that contained little white pieces of paper and told defendant that he wanted defendant to drop it in Williams' "other chow hole." Williams indicated that, when defendant asked what was in the package, he told defendant "don't make no difference what it is" and "[i]f it don't get there, you can get hurt. Or, you gonna—you know, you gonna have to pay for this." Williams testified that he had defendant's arm and put the plastic bag in defendant's hand and that defendant "coulda throwed it down," but that doing so "woulda cost him. [Defendant] woulda been in some trouble."

Steven Roy, another prisoner, testified that he saw Williams hand defendant something "in a clear package." Defendant testified that Williams put a small plastic package in defendant's hand and that Williams told him that he wanted defendant to take the package to "the chow hall." Defendant said that Williams told him "if I refused to do what he wanted, then he would have—he would not have any problem with either forcing me to pay an elaborate sum or money [sic], or that I could be stabbed—that I could physically be stabbed." Defendant testified that he asked Williams what was in the paper and that Williams told him "not to worry about it." Defendant indicated that

he put the package in his pocket and proceeded toward the "chow hall."

## II. ELEMENTS OF PRISONER IN POSSESSION OF CONTRABAND

Defendant argues that the trial court erred (1) by refusing his request for a jury instruction that to convict him of prisoner in possession of contraband the jury must find that he *knowingly* possessed the marijuana that the prosecution alleged was found on him and (2) by precluding defendant from offering a defense of lack of knowledge that he was in possession of marijuana. In effect, defendant's position is that the trial court erred in determining that prisoner in possession of contraband is a strict liability offense.[1] We disagree.

### A. OVERVIEW

The pertinent statute, MCL 800.281(4); MSA 28.1621(4), states, "Except as provided in section 2 [regarding medical prescriptions], a prisoner shall not possess any alcoholic liquor, prescription drug, poison, or controlled substance." We decline defendant's invitation to amend the statute so that it reads "Except as provided in section 2, a prisoner shall not KNOWINGLY possess any alcoholic liquor, prescription drug, poison, or controlled substance." As this Court said in *People v Norman*, 176 Mich App 271, 274; 438 NW2d 895 (1989):

> In resolving disputed interpretations of statutory language, it is the function of the reviewing court to effectuate

---

[1] For conviction of a strict liability crime, "the people merely need to prove that the defendant performed the wrongful act, irrespective of whether he intended to perform it." *People v Lardie*, 452 Mich 231, 241; 551 NW2d 656 (1996).

legislative intent. If the language of the statute is clear and
its meaning unambiguous, a common-sense reading of the
statute will suffice and no interpretation is necessary. *Karl
v Bryant Air Conditioning Co*, 416 Mich 558, 567; 331
NW2d 456 (1982); *State Farm Mutual Automobile Ins Co v
Wyant*, 154 Mich App 745, 749-750; 398 NW2d 517 (1986).
We find the language of the statute which proscribes the
possession of liquor [and, as here, controlled substances] in
prison, MCL 800.281; MSA 28.1621, to be clear and unam-
biguous. Therefore a common-sense reading of the statute
will suffice.

Indeed, such a reading *should* suffice. In enacting the
statute, the Legislature straightforwardly set out two,
and only two, elements of the crime. First, a prosecu-
tor must prove beyond a reasonable doubt that the
defendant is, in fact, a "prisoner." Second, a prosecu-
tor must prove beyond a reasonable doubt that the
defendant "possessed" a controlled substance (or
other item proscribed by MCL 800.281[4]; MSA
28.1621[4]), i.e., that the defendant had actual physi-
cal control of the controlled substance. It is undis-
puted on the record that the prosecutor in this case
proved both of these elements beyond a reasonable
doubt. There were no other elements for the prosecu-
tor to prove. The word "knowingly" is absolutely
absent from the statute as enacted by the Legislature
and signed into law by the Governor.

Defendant's position implicitly suggests that the
Legislature did not know quite what it was doing
when it enacted MCL 800.281(4); MSA 28.1621(4).
We disagree; the Legislature is presumed to be aware
of the consequences of the use, or omission, of lan-
guage when it enacts the laws that govern our behav-
ior. As Judge FITZGERALD wrote in *Lumley v Univ of*

*Michigan Bd of Regents*, 215 Mich App 125, 129-130;
544 NW2d 692 (1996):

> Courts must read the statutory language being construed
> in light of the general purpose sought to be accomplished.
> Where the language is so plain as to leave no room for
> interpretation, courts should not read into it words that are
> not there or that cannot fairly be implied.
>
> It is presumed that, when the Legislature enacts statutes,
> it is familiar with the rules of statutory construction and
> has knowledge of existing laws on the same subject. [Cita-
> tions omitted.]

Here, the suggestion of legislative incompetence is
particularly egregious when the provisions of MCL
800.281(4); MSA 28.1621(4) are compared with MCL
333.7403; MSA 14.15(7403), which covers the posses-
sion of controlled substances generally. MCL
333.7403(1); MSA 14.15(7403)(1) provides that "[a]
person shall not *knowingly or intentionally* possess
a controlled substance . . ." (emphasis supplied). In
the general statute regarding possession of controlled
substances, the Legislature specifically made the pos-
session of controlled substances a crime with an
intent element by the conscious use of the words
"knowingly or intentionally." On its face, the implicit
assumption that, by accident rather than by design,
the Legislature failed to include those words in the
statute covering contraband in prisons is far afield
from a common-sense reading.

This is particularly true when one recognizes that
the preface to this statute states, as noted in *Norman*,
*supra* at 275 & n 1, that its purpose is to prohibit or
limit access by inmates to certain weapons, alcoholic
liquors, and drugs. See *People v Krajenka*, 188 Mich

App 661, 664; 470 NW2d 403 (1990). Specifically, the preface reads:

> An Act to prohibit or limit the access by prisoners and by employees of correctional facilities to certain weapons and to alcoholic liquor, drugs, medicines, poisons, and controlled substances in, on, or outside of correctional facilities; to prohibit or limit the bringing into or onto certain facilities and real property, and the disposition of, certain weapons and substances; to prohibit or limit the selling, giving, or furnishing of certain weapons and substances to prisoners; to prohibit the control or possession of certain weapons and substances by prisoners; and to prescribe penalties.

It is significant that there is not a hint in this preface that it was the intent of the Legislature to prohibit only the *knowing* control of weapons and substances, including controlled substances, by prisoners. Further, there is a straightforward reason, requiring no great amount of thought or interpretation, for imposing a different, and stricter, standard on prisoners than on the general population: prisoners in correctional facilities are, after all, convicted criminals whose liberty is restricted by law and who are confined, after all, in the controlled, but often volatile, environment of a state prison. To require a *knowing* possession of drugs as an element of the crime for the general populace while omitting such a requirement for prisoners is, when viewed in this context, indeed sensible.

### B. *NORMAN* AND *VAUGHN*

The dissent relies on two cases to reach its conclusion that the offense created under MCL 800.281(4); MSA 28.1621(4) is a general intent crime. The first is *Norman, supra. Norman* involved the prosecution of

a prisoner who was caught with a sealed bottle of an
alcoholic liquor upon his return to prison. *Id.* at 272-
273. The dissent indicates that the *Norman* panel
implied that general intent is required for a conviction
under the statute at issue. We do not see any such
implication, at least no such implication upon which
to base a decision literally amending the statute. *Norman*, in pertinent part, states:

> The decision to grant a motion for trial adjournment
> rested in the trial court's sound discretion, which decision
> will not be reversed absent an abuse of discretion resulting
> in prejudice to the accused. *People v Gross*, 118 Mich App
> 161, 164; 324 NW2d 557 (1982). Because the parties stipu-
> lated to admission of documentary evidence establishing
> defendant's problem with alcoholism, the proffered testi-
> mony regarding defendant's alcoholism and blackouts was
> merely cumulative. The proffered testimony was also irrele-
> vant, since specific intent was not required for proof of the
> crime and a showing of defendant's alcoholism *would only
> have been useful to prove inability to form specific
> intent.* . . .
>
> There is no merit to the argument that defense counsel
> rendered ineffective assistance of counsel when failing to
> request a jury instruction on the defense of intoxication.
> *Because the crime charged was not a specific intent crime,*
> the instruction was unnecessary and would not have
> affected defendant's chances for acquittal. *People v Lyles*,
> 148 Mich App 583, 596; 385 NW2d 676 (1986).
>
> *Similarly, because the defense of intoxication would not
> have negated a showing of general intent,* the trial court's
> omission to instruct, sua sponte, on the intoxication
> defense would not have affected the outcome of defend-
> ant's case. Moreover, the trial court's erroneous instruction
> on specific intent afforded defendant more protection than
> the statute required. Therefore, any error in the trial court's
> omission to instruct on intoxication was harmless. MCR
> 2.613. [*Id.* at 275-276 (emphasis supplied).]

Read as a whole, this passage from *Norman* simply means that the crime in question is not a specific intent crime. While the reference to the defense of intoxication not negating "a showing of general intent" may contain a hint that this crime might be considered a general intent crime, at best it is just that. Our jurisprudence is not, and should not be, based upon hints.

The dissent also relies on *People v Vaughn*, 200 Mich App 32; 504 NW2d 2 (1993). That case revolved around minute portions of materials on a syringe and notebook paper retrieved from a prisoner's garbage in a prosecution under MCL 800.281(4); MSA 28.1621 (4). *Vaughn, supra* at 33-35. Laboratory testing revealed that there was cocaine present on both materials. The *Vaughn* Court observed:

> The amount of cocaine found, however, was so minute that it could not be weighed and was invisible to the naked eye. On the basis of this evidence, defendant was convicted as charged.
>
> On appeal, defendant argues that there was insufficient evidence to sustain the possession conviction because the prosecution failed to establish that he *knowingly* possessed the cocaine. We disagree. [*Id.* at 35 (emphasis supplied).]

The defendant in *Vaughn* relied on *People v Hunten*, 115 Mich App 167; 320 NW2d 68 (1982), for the proposition that "the mere presence of a quantity of a controlled substance that is invisible to the naked eye, without more, is insufficient to support an inference of *knowing* possession of that substance." *Id.* at 37 (emphasis supplied). Importantly, *Hunten*, while it involved a prisoner, did not involve a prosecution under MCL 800.281(4); MSA 28.1621(4) or earlier statutes prohibiting the same conduct. Rather,

*Hunten* involved the charge of possession of a controlled substance in violation of MCL 333.7403(1) and (2)(b); MSA 14.15(7403)(1) and (2)(b). *Hunten, supra* at 168. *This is the statute that deals with possession of controlled substances generally and, as in effect at the time of the Hunten decision and as currently in effect, it contains the "knowingly or intentionally" language referred to above.*[2]

Although the discussion of scienter in *Vaughn, supra,* evolved from a similar discussion in *Hunten,* the *Hunten* Court construed a statute that specifically contained a scienter requirement. Any "suggestion" drawn from *Vaughn* that MCL 800.281(4);    MSA

---

[2] We note that *Hunten,* in turn, relies on *People v Harrington,* 396 Mich 33; 238 NW2d 20 (1976). See *Hunten,* supra at 169-171. *Harrington* did not involve a prisoner at all. Rather, it involved the prosecution of a non-prisoner defendant for possession of a small residue of heroin. *Harrington, supra* at 38. In fairness, however, the charge in *Harrington* was brought under MCL 335.153; MSA 18.1123, which provided that "[a]ny person not having a license . . . who shall possess or have under his or her control any narcotic drug shall be deemed guilty of a felony . . . ." See *Harrington, supra* at 39, n 1. This language was repealed and replaced in 1971 by the Controlled Substances Act, including MCL 335.341; MSA 18.1070(41), which provided in pertinent part:

It is unlawful for any person *knowingly or intentionally* to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this act. [Emphasis supplied.]

In 1978, MCL 335.341; MSA 18.1070(41) was repealed and effectively replaced by MCL 333.7403; MSA 14.15(7403), which as discussed in the body of this opinion, generally prohibits knowingly or intentionally possessing a controlled substance. While MCL 333.7403; MSA 14.15(7403) has been amended many times since 1978, it has always included the pertinent "knowingly or intentionally" requirement.

Thus, the majority's discussion in *Harrington, supra,* of the requirement for knowing possession, *id.* at 43-44, while it did not deal with a prisoner, did deal with a situation in which the element of scienter was not explicitly part of the statute.

28.1621(4) defines a general intent crime, rather than a specific intent crime, is ill-founded.

### C. *LARDIE*

We recognize that the Michigan Supreme Court declared in *People v Lardie*, 452 Mich 231, 240; 551 NW2d 656 (1996), that "[s]tatutes that create strict liability for all of their elements are not favored." Also, even where a crime is created by statute, criminal intent is ordinarily an element of the crime. *Id.* at 239. However, the Court also stated:

> In order to determine whether a statute imposes strict liability or requires proof of a mens rea, that is, a guilty mind, this Court first examines the statute itself and seeks to determine the Legislature's intent. In interpreting a statute in which the Legislature has not expressly included language indicating that fault is a necessary element of a crime, this Court must focus on whether the Legislature nevertheless intended to require some fault as a predicate to finding guilt. [*Id.* at 239 (citations omitted).]

> Where the offense in question does not codify the common law and omits reference to the element of intent, this Court will examine the Legislature's intent in enacting the legislation to determine whether there is a mens rea requirement. [*Id.* at 246.]

As explained above, a conclusion that the Legislature sub silentio intended to impose a "knowledge" requirement as part of the prisoner in possession of contraband statute at issue in this case is untenable in light of the differing language between the statute at hand, MCL 800.281(4); MSA 28.1621(4), which includes no reference to knowingly or intentionally possessing contraband, and the general statute regarding possession of controlled substances, MCL 333.7403; MSA 14.15(7403), which proscribes only

"knowingly or intentionally" possessing a controlled substance. Inasmuch as one must presume that (1) the Legislature was familiar with existing laws regarding the subject of possession of controlled substances when it enacted MCL 800.281(4); MSA 28.1621(4) in its current form in 1982, *Lumley, supra* at 129-130, and (2) the general statute regarding possession of controlled substances had been in effect—with the pertinent "knowingly or intentionally" language—since 1978, it follows that the Legislature did not intend to include a requirement of knowing or intentional possession in MCL 800.281(4); MSA 28.1621(4). Thus, no "knowledge" element should be "read into" MCL 800.281(4); MSA 28.1621(4). Rather, given that the Legislature included no express intent element in MCL 800.281(4); MSA 28.1621(4) in the face of such an element being present in the general statute against possession of controlled substances, we conclude that the Legislature intended for MCL 800.281(4); MSA 28.1621(4) to be a strict liability crime.[3]

---

[3] In *Lardie, supra,* the Michigan Supreme Court construed the statute that prohibits operating a motor vehicle while under the influence of intoxicating liquor or a controlled substance, or with an unlawful blood alcohol level, and causing death ("OUIL/UBAL causing death"), MCL 257.625(4); MSA 9.2325(4), as in effect at the time of the incidents underlying the two consolidated cases in *Lardie.* See *Lardie, supra* at 238. While the OUIL/UBAL causing death statute included no express requirement of criminal intent, the Court nevertheless concluded that it required the showing of a general intent and was not a strict liability crime. *Id.* at 239, 256. This case is distinguishable from *Lardie* in light of the absence of any broader statute prohibiting conduct highly similar to OUIL/UBAL causing death that specifically requires proof of knowledge or intent. Unlike *Lardie,* the existence of a general statute dealing with the subject of possession of controlled substances that expressly requires proof of knowing or intentional possession shows that the omission of such a requirement in MCL 800.281(4); MSA 28.1621(4) reflects a legislative intent to impose

### III. DEFENDANT'S CLAIM OF DURESS

Defendant also argues that the trial court erred in precluding him from presenting a defense of duress. Duress is an affirmative defense "applicable in situations where the crime committed avoids a greater

---

no such requirement for the offense of prisoner in possession of contraband.

Similarly, while the dissent invokes *People v Perry*, 145 Mich App 778; 377 NW2d 911 (1985), the holding of that case is inapplicable to the case before us. In *Perry*, the defendant was convicted of the crime of possession of a weapon by an inmate, MCL 800.283; MSA 28.1623. *Perry, supra* at 779. The defendant in *Perry* testified that he was attacked by another inmate, that, in the struggle, he managed to pull a pipe from his attacker's hand, and that he was holding the pipe when guards arrived at the scene. *Id.* The trial court refused to give a jury instruction requested by the defense indicating, in effect, that defendant's right to self-defense included taking the weapon from another who would use it offensively against the defendant. *Id.* at 780. In reversing the defendant's conviction, this Court held "that defendant was entitled to have the jury instructed that, if the jury believed that defendant had acquired the pipe purely in self-defense and had intended to give it to the guards at the first opportunity, defendant was not guilty of 'possessing' the weapon." *Id.* at 783.

While we recognize that the *Perry* Court went on to include a discussion of the general principle that strict liability will not be presumed in a criminal statute, see *id.* at 783-785, that discussion was not essential to the pertinent holding. As noted in *People v Rau*, 174 Mich App 339, 342; 436 NW2d 409 (1989), the decision in *Perry* "turned on the issue of what constituted possession." Thus, whether the crime of prisoner in possession of a weapon is or is not a strict liability crime was immaterial to the actual decision in *Perry*. Under the actual holding in *Perry*, if the defendant prisoner in that case held a weapon only because he had taken it from his attacker, then the defendant never "possessed" the weapon and, thus, would be innocent of the crime of prisoner in possession of a weapon *even if* that crime is a strict liability crime.

Of course, whether prisoner in possession of a weapon is a strict liability crime is a question we need not address here. However, we note that even assuming arguendo that prisoner in possession of a weapon is not a strict liability crime, as with the crime at issue in *Lardie*, another distinction is that there is no general statute against possession of a weapon that applies to all, prisoners and nonprisoners alike. As discussed above, the general statute against possession of controlled substance explicitly includes a requirement of knowledge or intent while the prisoner in possession of contraband statute does not. Under well-established principles of statutory construction, we must presume that this difference in wording is not a mere accident but reflects legislative intent.

harm." *People v Lemons*, 454 Mich 234, 246; 562 NW2d 447 (1997). Accordingly, duress is not available as a defense to all crimes. For example, this Court has determined that "[d]uress is not a valid defense to homicide." *People v Moseler*, 202 Mich App 296, 299; 508 NW2d 192 (1993). Notably, this Court has also declined to extend the defense of duress to the crime of possession of a dangerous weapon by an inmate. *People v Rau*, 174 Mich App 339, 342; 436 NW2d 409 (1989).

Where duress is available as an affirmative defense, a defendant has the burden of producing a prima facie defense of duress. *Lemons, supra* at 248-249. A mere threat of future injury is insufficient to support a defense of duress. *Id.* at 247. Rather the threatened danger must be present, imminent, and impending. *Id.* Defendant's offer of proof outside the jury's presence involved only a threat of future harm by Williams if defendant did not take possession of the package that contained the marijuana. Indeed, defendant indicated that he proceeded toward the "chow hall" with the package after Williams gave it to him without any threat of imminent harm. Even if the defense of duress is available to a charge of prisoner in possession of contraband, the trial court precluded defendant from placing this issue before the jury because defendant did not establish a prima facie defense of duress. Thus, we decline to reach the hypothetical issue whether duress is available as a defense to the crime at issue.

### IV. DEFENDANT'S RIGHT TO TESTIFY

Defendant claims that he was denied the right to testify at trial. This claim is without merit. Indeed, the

trial court expressly and unequivocally told defendant that he could testify on his own behalf.

### V. TRANSCRIPTION OF JURY VOIR DIRE

Defendant argues, in essence, that MCR 6.425(F)(2)(a)(i), as previously in effect, was unconstitutional in generally precluding an indigent criminal defendant from obtaining a transcript of the jury voir dire at no cost. However, defendant failed properly to preserve this issue by making any request to the trial court for a transcript of the jury voir dire. *People v Hogan*, 225 Mich App 431, 437-438; 571 NW2d 737 (1997). Further, a transcript of the jury voir dire was filed with the trial court after the parties filed their appellate briefs. Accordingly, we presume that appellate defense counsel had an opportunity to examine the voir dire transcript for possible claims of error requiring reversal, as required under *People v Bass (On Rehearing)*, 223 Mich App 241, 258-260; 565 NW2d 897 (1997), vacated in part on other grounds 457 Mich 865 (1998), and found none that he considered appropriate to advance by seeking permission from this Court to file an amended or supplemental brief. See MCR 7.216, authorizing this Court, in its discretion, to permit amendment or additions to grounds for an appeal. Thus, we find no error requiring reversal with respect to this issue.

### VI. SEARCH AND SEIZURE

Defendant claims that the search of his person by prison authorities violated the Fourth Amendment protection against unreasonable searches and seizures. We disagree. This constitutional protection is inapplicable to prisoners. *Hudson v Palmer*, 468 US 517; 104 S Ct 3194; 82 L Ed 2d 393 (1984); *People v*

*Phillips,* 219 Mich App 159, 161; 555 NW2d 742 (1996).

### VII. LACK OF JURY INSTRUCTION ON UNLAWFUL USE

Defendant argues that the trial court erred in failing to instruct sua sponte on the lesser offense of "unlawful use," by which we presume he means the misdemeanor of unlawful use of marijuana, MCL 333.7404(2)(d); MSA 14.15(7404)(2)(d). This argument is completely without merit. First, the trial court had no duty whatsoever to instruct sua sponte the jury on this lesser misdemeanor. *People v Stephens,* 416 Mich 252, 261; 330 NW2d 675 (1982) (except for cases involving a first-degree murder charge, there is no duty to instruct sua sponte on lesser included offenses); see also *People v Corbiere,* 220 Mich App 260, 262-263; 559 NW2d 666 (1996) (enumerating a proper request as one precondition to a trial court's being required to instruct on a lesser misdemeanor offense). Further, a requested instruction on a lesser misdemeanor offense should be given only if "supported by a rational view of the evidence adduced at trial." *Stephens, supra* at 262; *Corbiere, supra.* In this case the prosecution presented no evidence that defendant used any of the marijuana that he was charged with possessing. Thus, no rational view of the evidence supported instructing the jury on the lesser misdemeanor of unlawful use of marijuana.

### VIII. ALLEGED PROSECUTORIAL MISCONDUCT

Defendant claims that the prosecutor improperly vouched for the credibility of prosecution witnesses by making the following remarks during his opening statement:

> And, the correction officers that work behind the bars, that don't have weapons, there's [sic] a lot more prisoners than they are [sic]. They're highly trained. They're trained to observe. They're trained to be watchful; to record things that happen. And, they will be telling you about that. They're supposed to be very observant about things. Subtle things that may occur.

Because defendant did not object to these remarks at trial, appellate review is precluded unless a curative instruction could not have eliminated the prejudicial effect or failure to consider the issue would result in a miscarriage of justice. *People v Howard*, 226 Mich App 528; 575 NW2d 16 (1997). The remarks at issue were not improper. A prosecutor may not vouch for witness credibility or suggest that the government has some special knowledge that a witness will testify truthfully. *Id.* at 548. However, the remarks at issue did not improperly vouch for the credibility of prosecution witnesses, but rather provided a reasonable explanation for why correctional officers testifying on behalf of the prosecution would have been alert to occurrences that would likely escape the notice of others.

### IX. ADMISSION OF EVIDENCE OF DEFENDANT'S PRIOR RECORD

Defendant argues that the two judgments of sentence from prior convictions that formed the basis for defendant's imprisonment at the time of the incident underlying this case were improperly admitted into evidence. However, because defendant did not object to the admission of this evidence below, our review of this issue is only for manifest injustice. *People v Asevedo*, 217 Mich App 393, 398; 551 NW2d 478 (1996). In light of the overwhelming evidence of guilt, any arguable impropriety in the admission of

the judgments of sentence did not result in manifest injustice. However, we find this evidence to have been properly admitted because it was relevant to showing that defendant was a prisoner, an essential element of the charged crime. *People v Mauch*, 23 Mich App 723, 726; 179 NW2d 184 (1970).

### X. SELF-REPRESENTATION

Defendant argues that he was denied the constitutional right to self-representation when the trial court denied his request during the course of trial to act as his own counsel. We disagree.

After the prosecution rested, the trial court reiterated its ruling that lack of knowledge and duress were not available as defenses to the crime of prisoner in possession of contraband. Following a colloquy between defendant personally and the trial court related to this ruling, defendant asked that his trial counsel withdraw and stated that he desired to represent himself. The trial court remarked in response to that request, "There's no constitutional right to represent yourself." There is, of course, a constitutional right to self-representation under the Sixth Amendment of the United States Constitution, *Faretta v California*, 422 US 806; 95 S Ct 2525; 45 L Ed 2d 562 (1975), as well as under Const 1963, art 1, § 13, *People v Adkins (After Remand)*, 452 Mich 702, 720; 551 NW2d 108 (1996); *People v Anderson*, 398 Mich 361, 366; 247 NW2d 857 (1976).

Nevertheless, the right to self-representation is not absolute. *Id.* at 366. A trial court should not allow a defendant to proceed pro se if the defendant will unduly disrupt the court. *Adkins, supra* at 721-722; *Anderson, supra* at 368. Where a defendant behaves

in a disruptive manner and makes a motion to pro-
ceed pro se for surreptitious reasons, a trial court
may appropriately deny self-representation. See *Peo-
ple v Ahumada,* 222 Mich App 612, 615-617; 564
NW2d 188 (1997).

In the case before us, the trial court precluded
defense counsel from presenting evidence in support
of defenses that the trial court had previously held
were inapplicable. This ruling prompted defendant's
request to represent himself. Defendant stated that he
desired to represent himself because "the problem
that I got is that I'm not being allowed to present wit-
nesses on my own behalf" and "I'm not being allowed
to testify on my own behalf." It is evident that defend-
ant desired to represent himself in order to elicit tes-
timony to support claims of lack of knowledge and
duress, in defiance of the trial court's rulings. Thus,
the trial court properly denied the request for self-
representation because it would have been unduly
burdensome and was made for surreptitious reasons.
While the trial court's ruling was apparently based on
an incorrect belief that there is no constitutional right
to self-representation, we do not reverse where the
trial court reaches the right result for a wrong reason.
*People v Brake,* 208 Mich App 233, 242, n 2; 527 NW2d
56 (1994).

We caution the trial court that in future cases it
should consider requests to exercise the right to self-
representation by criminal defendants in accordance
with the procedure described in *Adkins, supra* at
721-722, and in compliance with MCR 6.005.[4]

---

[4] In *Adkins, supra* at 721-722, the Court indicated that before granting
a request for self-representation, the trial court should ascertain that (1)
the request is unequivocal, (2) the request is made "knowingly, intelli-

### XI. ALLEGED INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant claims that trial counsel provided ineffective assistance on several grounds that do not warrant extended discussion. Relief based on ineffective assistance of counsel requires a reasonable probability that, but for unprofessional errors by counsel, the result of a proceeding would have been different. *People v Pubrat,* 451 Mich 589, 596; 548 NW2d 595 (1996). In light of the overwhelming evidence of guilt, there is no reasonable probability that, but for any of the alleged deficiencies by trial counsel, the result of the trial would have been different.

Affirmed.

O'CONNELL, J., concurred.

FITZGERALD, P.J. *(concurring in part and dissenting in part).* I respectfully dissent from the majority's conclusion that the offense of prisoner in possession of a controlled substance, MCL 800.281(4); MSA 28.1621(4), is a strict liability crime. I believe that "knowing" possession of the controlled substance is an element of the crime and therefore I conclude that defendant was denied his right to a properly instructed jury by the court's refusal to give his requested instruction. Accordingly, I would reverse defendant's conviction and remand for a new trial.

On the basis of its ruling that the crime of prisoner in possession of a controlled substance is a strict liability crime, the trial court refused to permit defendant to present witnesses to support defendant's theo-

___

gently, and voluntarily," and (3) the defendant will not unduly disrupt the court while representing himself. MCR 6.005(D)-(E) sets forth certain requirements to be followed by a trial court in dealing with a criminal defendant who waives the right to counsel.

ries that he did not have knowledge of the contents of the package and that he possessed the package under duress. During an offer of proof made outside the presence of the jury, inmate Tyrone Williams testified that on the day of the incident he encountered defendant in a common area of the prison. He stated that he suspected he was about to be "shook down," so he forced defendant to take the package containing the marijuana that was eventually retrieved from defendant. Williams indicated that when defendant asked what was in the package, he told defendant "it makes no difference," and instructed defendant, under threat of physical harm, to deliver the package. Steven Roy, another witness, testified that he saw Williams give the package to defendant. Defendant testified that he was not told of the contents of the package and that he took the package only because Williams threatened that defendant could be stabbed if he did not take the package.

Defendant requested that the trial court instruct the jury that defendant must have knowingly possessed the marijuana. The trial court declined to do so and instead gave the following instruction on the offense of inmate in possession of controlled substances:

> The defendant is being charged with being a prisoner and having contraband, in this case marijuana, in his possession. To prove this charge the prosecutor must prove each of the following elements beyond a reasonable doubt. First, that the Defendant was incarcerated with the Michigan Department of Corrections. And second, that he was in possession of contraband, namely marijuana. Possession does not necessarily mean ownership. Possession means that the person had actual physical control of the alleged contraband.

The thrust of the instruction was that mere possession was a sufficient basis for conviction.

Defendant argues that he was denied his right to a properly instructed jury by the court's refusal to instruct the jury that he must have knowingly possessed the marijuana. I agree.

MCL 800.281(4); MSA 28.1621(4) states in relevant part that "a prisoner shall not possess any alcoholic liquor, prescription drug, or controlled substance." The statute itself makes no reference to a specific intent. In *People v Norman*, 176 Mich App 271, 274; 438 NW2d 895 (1989), a panel of this Court ruled that § 1(4) does not require proof of specific intent for a conviction; however, the panel did not hold that § 1(4) creates a strict liability offense. Rather, the *Norman* panel implied that "a showing of general intent" is sufficient for a conviction under the statute. *Id.* at 276. Further, in *People v Vaughn*, 200 Mich App 32, 38; 504 NW2d 2 (1993), this Court, without specifying the intent necessary for a conviction under § 1(4), stated that some evidence must be presented "that would permit an inference of scienter." Case law, therefore, suggests that § 1(4) creates a general intent crime, not a specific intent crime, and certainly not a strict liability crime. For a general intent crime, the prosecutor must prove that the defendant purposely or voluntarily performed the wrongful act.

This Court has vacillated on the issue whether the existence of knowledge as an element makes a crime one of specific intent rather than general intent. *People v Perez-DeLeon*, 224 Mich App 43, 55-56; 568 NW2d 324 (1997). However, given this Court's implication in *Norman* and *Vaughn* that the crime of prisoner in possession of contraband is a general intent

crime, the existence of knowledge as an element of the crime would not make the crime a specific intent crime. Rather, the element of knowledge would limit the statute's application to knowing, rather than innocent, violations of the provisions of the statute. See, e.g., *People v Watts*, 133 Mich App 80, 82-84; 348 NW2d 39 (1984); *People v Laur*, 128 Mich App 453, 455; 340 NW2d 655 (1983). Construing the statute to require the element of knowledge is consistent with this state's general rule of avoiding the presumption of strict liability in a criminal penal statute. *People v Perry*, 145 Mich App 778, 783-784; 377 NW2d 911 (1985).

In *Perry*, the defendant inmate was charged with possessing a pipe that he allegedly used to attack another inmate. MCL 800.283; MSA 28.1623. At trial, the defendant testified that he was attacked by the other inmate and that, in the struggle, he managed to pull the pipe away from his attacker's hand. When the guards arrived, the defendant was holding the pipe. In connection with this testimony, the defendant requested that the trial court instruct the jury as follows:

> I instruct you that the defendant has a right to defend himself whether in prison or not. The right of self defense extends to and permits the taking of a weapon from another who would use that weapon offensively.
> If you believe that the defendant obtained possession of the pipe by taking it from an aggressor, and thereafter possessed the weapon in order to keep it away from an aggressor, without using it for offense purposes, then the defendant must be found not guilty. [*Id.* at 780.]

The trial court declined to give the instruction, reasoning that, if the jury believed defendant's story, the

jury would not convict him of possession even without the requested instruction.

During closing arguments, the prosecutor repeatedly admonished the jury to "follow" the law as provided by the court's instructions. The court then instructed the jury that the elements of the offense of inmate in possession of a weapon were (1) possession (2) of a weapon. This Court, after noting that the entire thrust of the court's instructions, especially when augmented by the prosecutor's arguments at trial, was that "mere possession" was a sufficient basis for conviction, *id. at 783*, concluded:

> We believe that defendant was entitled to have the jury instructed that, if the jury believed that defendant had acquired the pipe purely in self-defense and had intended to give it to the guards at the first opportunity, defendant was not guilty of "possessing" the weapon. The statute, MCL 800.283; MSA 28.1623, does not expressly provide for such an instruction. However, without such an instruction, the statute would, in effect, impose strict liability upon any prisoner found holding a weapon. As a general rule, strict liability will not be presumed in a criminal penal statute:
>
> "The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is universal and persistent in mature systems of law as believe in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. . . .
>
> "Crime, as a compound concept, generally constituted only from concurrence as an evil-meaning mind with an evil-doing hand, was congenial to an intense individualism and took deep and early root in American soil. As the states codified the common law of crimes, even if their enactments were silent on the subject, their courts assumed that the omission did not signify disapproval of the principle but merely recognized that intent was so inherent in the idea of

the offense that it required no statutory affirmation." (Citations omitted.) [*Id.* at 783-784.]

The Court then noted that this principle is particularly true when dealing with a possessory offense. *Id.* at 784. Concluding that possession requires the intent to possess, the Court reversed the defendant's conviction and instructed the trial court on retrial to so instruct the jury.

Like the offense of inmate in possession of a controlled substance, the offense of prisoner in possession of a weapon is encompassed within the act prohibiting the possession of weapons and contraband by inmates. Neither statute expressly contains an element of intent or knowledge. However, given this Court's implications in *Norman, supra,* and *Vaughn, supra,* as well as this Court's holding in *Perry, supra,* and the general rule disfavoring the presumption of strict liability in a criminal penal statute, I conclude that the offense of inmate in possession of a controlled substance is not a strict liability crime and that an element of knowing possession must be read into the statute. Accordingly, I would reverse defendant's conviction.