# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

JACKIE LAMONT THOMPSON,

   Defendant-Appellant.

FOR PUBLICATION
March 29, 2016

No.  318128
Clinton Circuit Court
LC No.  13-009068-FC

Before:  RONAYNE KRAUSE, P.J., and MURPHY and SERVITTO, JJ.

RONAYNE KRAUSE, P.J.  (*dissenting*).

   I respectfully dissent.  I do not read the applicable statutory or caselaw as narrowly as does the majority, and I further conclude that even if the majority correctly reads that law, the majority misunderstands the facts.  Either way, I would affirm.

   As the majority explains, defendant pleaded no contest to digitally penetrating his then 13-year-old stepdaughter in exchange for a sentence within the sentencing guidelines.  Defendant was, notably, *not* charged with any of the prior sexual, physical, and emotional abuse he inflicted on his stepdaughter over a period of approximately two years.  The instant appeal specifically concerns the trial court's assessment of 50 points under offense variable (OV) 7.  Fifty points should be assessed under OV 7 if "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense[.]"  MCL 777.37(1)(a).  At issue is solely whether defendant's egregious conduct may be used to assess points under OV 7 in light of the record evidence and our Supreme Court's statement that "[o]ffense variables are properly scored by reference only to the sentencing offense except when the language of a particular offense variable statute specifically provides otherwise."  *People v McGraw*, 484 Mich 120, 135; 771 NW2d 655 (2009).[1]

   Factually, the trial court relied in significant part on a police report.  The police officer's summary of the victim's interview states that the victim was 13 years old at the time of the

---

[1] *McGraw* dealt with OV 9, which simply states, "Offense variable 9 is number of victims." MCL 777.39(1).  It also dealt with conduct that occurred after the date of the offense of which the defendant was convicted.  *McGraw*, 484 Mich at 122.

specific assault of which defendant was convicted and that defendant had sexually abused her at least twice a week for the prior "couple of years." The last sexual assault occurred on February 24, 2013; defendant pleaded no contest specifically to that last assault. In the police report, and in an attached written statement by the victim, reference was made to an incident in which defendant put a BB gun to the victim's head and threatened to kill her if she did not perform a sexual act. The police report also alluded to instances in which defendant pulled the victim's hair, struck her buttocks, threatened her life if she said anything about the sexual abuse, and hit her with a belt buckle, resulting in bruises on numerous occasions. In the victim's statement, it is clear that defendant had threatened her life "many times" and that to the extent to which she subsequently did not resist, she acted out of fear. Medical documents attached to the police report indicated that defendant once bit the victim on one of her breasts, leaving a scar. The trial court also considered defendant's presentence investigation report, which essentially echoed the police report information.

When reviewing a challenge to a sentencing guidelines score, we review for clear error whether the trial court's factual findings are supported by a preponderance of the evidence, and we review de novo as a question of law whether those factual findings properly justify the guidelines scores at issue. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993). We defer to the trial court's superior ability to observe and assess the credibility of the persons who, in contrast to the operation of this Court, actually appeared before it. See *McGonegal v McGonegal*, 46 Mich 66, 67; 8 NW 724 (1881). When calculating a defendant's minimum-sentence range under the sentencing guidelines, a court may consider all record evidence, including the contents of a presentence investigation report. *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012).

"Sadism" is statutorily defined as "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification." MCL 777.37(3). As our Supreme Court has explained, the terms "torture," "excessive brutality," and "conduct designed to substantially increase the fear and anxiety a victim suffered" are to be given their ordinarily understood meanings, and fifty points should be assessed if *any* such conduct occurred. *Hardy*, 494 Mich at 439-444. I believe that any conceivable argument to the effect that defendant inflicted anything less on the victim would be utterly illogical. Further, it would not take into account the particular dynamics of ongoing, serial abuse, either as a general matter or the specific abuse that occurred in this case.

In my opinion, the majority reads more into *McGraw* than our Supreme Court wrote. The holding in *McGraw* was not that conduct that occurred at a different time from the sentencing offense could *never* be considered when scoring guidelines for that offense, but rather that any such conduct must *pertain to* the sentencing offense unless the offense variable specifies otherwise. See *McGraw*, 484 Mich at 129. Indeed, our Supreme Court was urged to pronounce an approach restricting consideration to "only conduct occurring during the offense," but instead explained that consideration must be given to "conduct '*relating to* the offense . . . ' " *Id*. at 124, quoting *People v Sargent*, 481 Mich 346, 349; 750 NW2d 161 (2008). While perhaps a subtle distinction, I think it a highly significant one. Furthermore, strictly speaking, *McGraw* was concerned with conduct that occurred *after the completion of the sentencing offense*. *McGraw*,

484 Mich at 122, 132-135. There is no possibility of any subsequent conduct being used to score OV 7 in the instant matter.

The majority points out that our Supreme Court explicitly held that sentencing courts could consider "transactional conduct when deciding what sentence to impose within the appropriate guidelines range and whether to depart from the guidelines recommendation." *McGraw*, 484 Mich at 129. The majority then goes on to discuss *conduct unrelated to the sentencing offense*, which entirely misses the point. Again, our Supreme Court explicitly *rejected* a "conduct occurring during the offense" approach in favor of a "conduct relating to the offense" one. Furthermore, our Supreme Court clearly regarded transactional conduct as something else entirely, which makes perfect sense in the context of a defendant who committed a series of offenses as part of a single transaction, in which case it would be unsurprising that conduct relating to only one of those offenses could not be used to compute the OV score for a different offense. What the majority overlooks is that there is absolutely no reason why conduct cannot relate to multiple offenses and that our Supreme Court expressly rejected the notion that such related conduct must chronologically overlap the sentencing offense if it is to be used to determine an OV score.

Our Supreme Court has explained that the proper delineation between conduct that may be considered and that which may not be considered is not strictly chronological. Rather, the delineation is whether the conduct in question pertains to the sentencing offense, which is an inherently fact-specific inquiry. I believe that the majority finds in our Supreme Court's opinion a neat, simple, and easy-to-apply bright-line rule that was never articulated nor intended and that, in this case, is neither proper nor just. Our Supreme Court could easily have stated that conduct that occurs at a different time from the sentencing offense may not serve as a basis for assessing OV points unless a statute provides otherwise, but did not.

That being said, scorable conduct may well usually overlap chronologically with the sentencing offense. An observed trend, however, is not a rule, and statistics reveal nothing about specific cases. As applied to OV 7, I conclude that in light of our Supreme Court's analysis in *McGraw* and the plain language of MCL 777.37, whether points may be assessed depends not necessarily on when the conduct at issue occurred, but on the extent to which that conduct *pertains to the sentencing offense*. Nothing in *McGraw* dictates that such conduct must occur at the same time as the sentencing offense or must pertain to *only* the sentencing offense.

Importantly, this case does not involve simple facts and a straightforward timeline of discrete events. It has long been recognized that "there is general agreement among experts that reactions of a victim of sexual assault vary quite significantly from those of a victim of the 'average' crime." *People v Beckley*, 434 Mich 691, 715-716; 456 NW2d 391 (1990) (opinion by BRICKLEY, J.). As a general matter, in situations involving serial sexual or physical abuse, the perpetrators inherently need to maintain control over their victims, often through some manner of threat or manipulation *intended to affect the victim's future behavior*.[2] In any kind of ongoing

---

[2] See, e.g., National Center for Prosecution of Child Abuse, *Investigation and Prosecution of Child Abuse, Third Edition* (Thousand Oaks: 2004), pp 13-15; Hamby & Grych, *The Complex*

interpersonal relationship, it simply makes no sense to pretend that one interaction is irrelevant to subsequent interactions, and this is *especially* so in familial relationships or any other relationship involving authority, control, or influence over another person.[3] Situations involving serial acts of abuse over time are not mere transactions, but are deeply and fundamentally interconnected. To regard the individual acts as discrete and separable ignores both the research and common sense. Acts of extraordinary brutality or terror during any particular act of abuse inherently pertain to future acts of abuse perpetrated against the same victim.

Nowhere has the Legislature explicitly stated that scorable conduct must have occurred during the offense. Rather, the statute requires that 50 points be assessed if the defendant engaged in sadism, torture, excessive brutality, or other conduct designed to increase fear and anxiety during the offense. Furthermore, nowhere has the Legislature required that such conduct

---

*Dynamics of Victimization: Understanding Differential Vulnerability Without Blaming the Victim*, to appear in Cuevas & Rennison, eds, *The Wiley Handbook on the Psychology of Violence* (West Sussex: John Wiley & Sons, Ltd, 2016), pp 66-81; 1 Royal Commission into Institutional Responses to Child Sexual Abuse, *Interim Report* (2014), p 124.

[3] For example, intimate partner violence is overwhelmingly chronic. See, generally, Rand & Saltzman, *The Nature and Extent of Recurring Intimate Partner Violence Against Women in the United States*, 34(1) J Comp Fam Stud 137 (2003). Controlling behaviors are, unsurprisingly, associated with the infliction of physical or sexual violence within relationships. Catallozzi et al, *Understanding Control in Adolescent and Young Adult Relationships*, 165(4) Archives of Pediatrics & Adolescent Med 313 (2011). Furthermore, experiencing violence physically alters young brains to become more sensitive to further threats and more prone to future psychological problems, much like soldiers exposed to combat stresses. McCrory et al, *Heightened Neural Reactivity to Threat in Child Victims of Family Violence*, 21(23) Current Biology R947 (2011). It should be obvious that *any* hostile environment from which a person cannot escape is, for all practical purposes, little more than a form of torture, with the net effect of causing a progressive depletion of that person's ability to cope. Involvement, as either a victim or a perpetrator, in any individual offense within the context of such ongoing abuse is intrinsically and qualitatively different from involvement in a criminal act that actually can be severed from other criminal acts. I am concerned by the majority's dismissal of these facts as some kind of emotional plea.

pertain to *only* the sentencing offense, to the exclusion of others. Defendant unquestionably engaged in conduct designed to increase the victim's fear and anxiety during the sentencing offense.[4] Because that conduct pertained to the sentencing offense and met the statutory requirements for assessing points under OV 7, I conclude that the trial court properly scored OV 7 at 50 points.[5] I would, therefore, affirm the trial court.

/s/ Amy Ronayne Krause

---

[4] In my view, the defendant engaged in conduct for the purpose of increasing the fear and anxiety the victim suffered during the offense beyond what such a victim might ordinarily be expected to suffer during that offense. See *Hardy*, 494 Mich at 439-443. This, of course, may be inferred from circumstantial evidence. *Id*. at 440 n 26. While the majority asserts that it is not appropriate to consider whether defendant's conduct was designed to substantially increase the victim's fear and anxiety, appellate courts generally do not reverse when the trial court reached the right result for a wrong reason. *People v Ramsdell*, 230 Mich App 386, 406; 585 NW2d 1 (1998). Accordingly, I would affirm defendant's sentence.

[5] I appreciate that in light of our Supreme Court's recent decision in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), facts that increase a defendant's minimum sentence range under the guidelines must be admitted by the defendant or found by a jury. The instant case features a situation seemingly unaddressed by *Lockridge*, in which defendant did not, strictly speaking, personally admit facts directly to the sentencing court. However, defendant expressly agreed to the trial court's reliance on the police report for the no-contest plea-taking procedure and has not made any contention that the trial court's *factual* findings were incorrect or improper. I would consider his acceptance of this procedure as an admission, and I perceive no constitutional infirmity under *Lockridge*.